# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **KELLIE LETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:20CV273 HEA** |
| | ) | |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the

Commissioner of Social Security denying the application of Plaintiff for disability

insurance benefits under Title II, 42 U.S.C. §§ 401-434 and supplemental security

income benefits under Title XVI, 42 U.S.C. §§ 1381-1385. The Court has reviewed

the filings and the administrative record as a whole, which includes the hearing

transcript and medical evidence. The decision of the Commissioner will be

affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## **Background**

Plaintiff applied for disability and  supplemental social security income (SSI) on November 7, 2018.  A hearing was held on January 16, 2020, in front of an Administration Law Judge (ALJ). In an opinion issued on April 16, 2020, the ALJ determined that Plaintiff was not under a disability at any time from her alleged onset date of October 2, 2017. In her decision, the ALJ found Plaintiff had the severe impairments of lumbar degenerative disc disease, seizure disorder, plantar fasciitis, myalgia, bilateral carpal tunnel syndrome, chronic fatigue syndrome, anxiety, and panic attacks. The ALJ further found Plaintiff carries diagnoses of transient paresthesias, history of cervical dysplasia, hypertension, sinus bradycardia, vaginosis, vitamin D deficiency, cervicalgia, PVC, history of mitral prolapse, and wrist contusion, all of which the ALJ found to be non-severe. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work, lifting no more than 20 pounds occasionally and lifting/carrying up to 10 pounds frequently as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations:

…[Plaintiff] is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is able to engage in frequent bilateral handling. She should avoid all exposure to unprotected heights and use of dangerous moving machinery. She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.

Based on vocational expert testimony, the ALJ found Plaintiff could perform work such as a housekeeper, cafeteria attendant, and price marker.

Plaintiff filed a timely Request for Review of Hearing Decision, and the Appeals Council denied the request for review. Plaintiff has exhausted all administrative remedies. The decision of the ALJ stands as the final decision of the Commissioner.

## **Hearing Testimony**

Plaintiff, who was represented by counsel at her hearing before the ALJ, testified she was 39 at the time of the hearing.  Plaintiff is married and lives with her husband and three children, ages 15, 13, and 8. She has a driver's license, but she is not allowed to drive, per her doctors' instructions.  She has trouble walking and carrying things.  She has trouble with confusion and focusing on different things and tasks. She was not receiving mental health treatment at the time of the hearing.  Her primary care physician treats her anxiety with medication, which Plaintiff testified helps.  She has braces for her wrists for her carpal tunnel syndrome, which help with the pain, but has had no surgery.

3

Plaintiff further testified that a lot of the time she won't sleep throughout the night.  She sleeps maybe three hours. She gets up to get her children off to school and will lay back down for a couple of hours.  She then tries to clean up a little bit. She has pain in her lower back and the neck and legs, for which she takes Naproxen.

Plaintiff can cook; she stands holding onto the counter. She is very shaky and off balance without holding on.  She uses a cane that is not prescribed. Plaintiff grocery shops with her husband.  It is very hard for her to do the laundry; she can do about three loads, walking back and forth.  She usually has help from her daughters or neighbors. She picks up and does dishes while standing at the counter.

Plaintiff had her first seizure in 2006. Since 2017, the seizures are happening a little more frequently.  Her seizures occur anywhere from 30 to 60 days.  After a seizure, Plaintiff is usually "out of it" from a few hours to a full day, and she sleeps quite a bit afterward.

Plaintiff has back pain due to her degenerative disc disease. She takes trazanidine infrequently because it makes her sleep. Plaintiff's back pain is constant, and she experiences spikes three or four times per week. Walking, bending, and stooping cause the spikes to occur.

Plaintiff takes Clonazepan and Trazadone for her anxiety. She has trouble going out in public.  She has had tremors since 2016, which affects her ability to walk.  She gets wobbly.

She further testified that she has trouble with her heart and has been diagnosed with mitral valve prolapse and PVC. She takes Atenolol and hydrochlorothiazide for hypertension.

A Vocational Expert (VE) testified, and the ALJ posed the following hypothetical: an individual with the Plaintiff's same age, education, could lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently. Stand and walk for about six hours and sit for about six hours in an eight-hour workday with normal breaks. The individual would never be able to climb ladders, ropes, or scaffolds; would occasionally be able to climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The individual is able to engage in frequent bilateral handling and would need to avoid all use of dangerous moving machinery and exposure to unprotected heights. The individual is able to perform simple, routine and repetitive tasks, in an environment free of fast-paced production requirements involving only simple work-related decisions, and routine workplace changes. The VE testified that person could perform the following jobs: (1) a housekeeper; (2) a cafeteria attendant; and (3) a price marker.

A second hypothetical posed, assuming the same facts as the first, added that sedentary exertion, lifting up to 10 pounds occasionally, standing/walking for about two hours, and sitting for the six hours in an eight-hour workday with normal brakes. The VE testified the individual could perform the jobs of document specialist, addresser, and table worker.

## **Legal Standard**

To be eligible for SSI under the Social Security Act, Plaintiff must prove that [s]he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

At Step Four of the process, the ALJ must assess the claimant's residual functional

capacity (RFC) – that is, the most the claimant is able to do despite her physical

and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and

determine whether the claimant is able to perform any past relevant work. *Goff v.*

*Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth

step of process).

      The claimant bears the burden through Step Four of the analysis. If [s]he

meets this burden and shows that [s]he is unable to perform [her] past relevant

work, the burden shifts to the Commissioner at Step Five to produce evidence

demonstrating that the claimant has the RFC to perform other jobs in the national

economy that exist in significant numbers and are consistent with [her]

impairments and vocational factors such as age, education, and work experience.

*Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

      The Court must affirm the Commissioner's decision if it is supported by

substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir.

2010). Substantial evidence is less than a preponderance but enough that a

reasonable person would find it adequate to support the conclusion. *Jones*, 619

F.3d at 968. Additionally, the Court must consider evidence that supports the

Commissioner's decision as well as any evidence that fairly detracts from the

decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing

the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## <u>Decision of the ALJ</u>

At Step One of the decision the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2, 2017. At Step Two, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease, seizure disorder, plantar fasciitis, myalgia, bilateral carpal tunnel syndrome, chronic fatigue syndrome, anxiety, and panic attacks. She has the non-severe impairments of transient paresthesias, history of cervical dysplasia, hypertension, sinus bradycardia, vaginosis, vitamin D deficiency, cervicalgia, PVC, history of mitral

8

prolapse, and wrist contusion However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, so the ALJ's analysis proceeded to Step Four. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the RFC to perform light work and she is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is able to engage in frequent bilateral handling. She should avoid all exposure to unprotected heights and use of dangerous moving machinery. She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.

At Step Four, the ALJ found Plaintiff could not perform her past relevant work. At Step Five, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, such as a housekeeper, cafeteria worker, and price marker. Based on VE testimony, the ALJ found Plaintiff could perform work. Therefore, the ALJ found Plaintiff not disabled.

## **Statement of the Issues**

The issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are (1) whether the ALJ committed reversible error when she characterized plaintiff's heart related problems of hypertension, PVC, bradycardia, and mitral valve prolapse as non-severe.

Plaintiff argues that the ALJ committed reversible error when she characterized Plaintiff's heart related problems of hypertension, PVC, bradycardia, and mitral valve prolapse as non-severe.

## Discussion

The ALJ carefully detailed her findings through her discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

The ALJ articulated that an impairment is found to be non-sever when medical evidence establishes only a slight abnormality, or a combination of slight abnormalities, that would have no more than a minimal effect on an individual's ability to perform basic work activities.  20 CFR 404.1520(c), 404.1521, 416.920(c), 416.921, and SSR 85-28. Further, she considered Plaintiff's non-severe impairments when she assessed Plaintiff's RFC.

As Defendant points out, Plaintiff's argument contains references to her medical issues which occurred significantly earlier than her claimed onset date and argues that these issues may have correlated to her cardiovascular conditions. Plaintiff's argument fails.  These symptoms could also relate to Plaintiff's other diagnosed conditions.

Plaintiff's heart related conditions normalized within a few years of her 2011 onset.  Indeed, as Defendant correctly argues, at every medical visit from October 2, 2012 onset date to May 20 2019, Plaintiff denied any significant cardiovascular symptoms.  The examination findings during this period were generally normal as well.

Although beginning on May 20, 2019 Plaintiff stated that she experienced chest tightness, palpitations, and difficulty breathing requiring additional testing, which did reveal some abnormal results, these symptoms and abnormal results were managed by adjusting Plaintiff's medications.  *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (an impairment that is "controllable or amenable to

11

treatment [does] not support a finding of total disability"). *Hartzell v. Kijakazi*, No. 4:20 CV 1299 ACL, 2022 WL 656126, at *6 (E.D. Mo. Mar. 4, 2022). Plaintiff again denied having heart related symptoms by September 3, 2019 when her cardiovascular examination was normal. Subsequent visits in September and October, 2019 also revealed normal cardiovascular findings.

Moreover, the abnormal results do not require greater limitations than the ALJ's RFC determination which included non-exertional limitations. In her decision, the ALJ thoroughly discussed Plaintiff's heart related conditions. While she did not find them severe, she included them in her discussion of Plaintiff's impairments that affected Plaintiff's RFC.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and

Order.

Dated this 26th day of September, 2022.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE